**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ignacio Moreno, | No. CV-20-01980-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Ignacio Moreno's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 21). The appeal is fully briefed (Doc. 21, Doc. 29, Doc. 30), and the Court now rules.

## I.    BACKGROUND

The issue presented in this appeal is whether the Administrative Law Judge ("ALJ") committed legal error in determining that Plaintiff was not disabled from March 27, 2017, to March 3, 2020. (Doc. 21 at 11, 19).

### a.  Factual Overview

Plaintiff was 52 years old at the time of his hearing before the ALJ. (Doc. 21 at 3). He has a college education and past work experience as a maintenance technician, handyman, cabinet installer, fish butcher, and warehouse stocker. (*Id.*; Doc. 17-3 at 24–25). Plaintiff filed his social security disability claim on September 28, 2017, alleging disabilities beginning on May 1, 2015, including fibromyalgia, rheumatoid arthritis,

pinched nerves, muscle spasms, full body pain, prostate issues, headaches, fatigue, insomnia, and blurry vision and burning eyes. (Doc. 21 at 1; Doc. 29 at 2). Plaintiff later requested to amend his alleged disability onset date from May 1, 2015, to March 27, 2017, but the ALJ denied his motion, finding that "the evidence [did] not demonstrate a finding of disability as of the amended alleged onset date." (Doc. 21 at 1–2; Doc. 17-3 at 14). The ALJ denied Plaintiff's claim on March 3, 2020. (Doc. 17-3 at 26). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (Doc. 21 at 2).

**b. The SSA's Five-Step Evaluation Process**

To qualify for social security benefits, a claimant must show he "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if he suffers from a medically determinable physical or mental impairment that prevents him from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.

*Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

**c.  The ALJ's Application of the Factors**

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Doc. 17-3 at 17).

At the second step, the ALJ determined that Plaintiff's cervical and lumbar spondylosis, polyarthritis or osteoarthritis, fibromyalgia, and bilateral shoulder impingement constituted severe impairments under 20 C.F.R. § 404.1520(c). (*Id.* at 17–18). The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 18).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) with the following exceptions: he can lift

1    and carry twenty pounds occasionally and ten pounds frequently; he can stand and walk
2    for six hours in an eight-hour day, and sit for six hours in an eight-hour workday; he can
3    frequently climb ramps and stairs, balance, stoop and crouch; he can occasionally climb
4    ladders or scaffolds, kneel and crawl; and he can frequently reach overhead with both upper
5    extremities, and must avoid concentrated exposure to extreme temperatures, wetness and
6    hazards. (*Id.*).

7        At the fourth step, the ALJ concluded that Plaintiff is unable to perform any past
8    relevant work as a handyman, maintenance technician, cabinet installer, fish butcher, or
9    warehouse stocker. (*Id.* at 24–25).

10        At the fifth and final step, the ALJ concluded that the Plaintiff can make an
11    adjustment to other work that exists in significant numbers in the national economy, such
12    as a housekeeper, cashier II, or sales attendant. (*Id.* at 25–26). Accordingly, the ALJ
13    concluded that Plaintiff has not been under a disability since the alleged onset date or
14    Plaintiff's requested amended onset date. (*Id.* at 26).

15    **II.    LEGAL STANDARD**

16        This Court may not overturn the ALJ's denial of disability benefits absent legal error
17    or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).
18    "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept
19    as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)
20    (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).
21    On review, the Court "must consider the entire record as a whole, weighing both the
22    evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may
23    not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting
24    *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws
25    inferences, resolves conflicts in medical testimony, and determines credibility. *See*
26    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,
27    1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more
28    than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The

1   Court "review[s] only the reasons provided by the ALJ in the disability determination and
2   may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at
3   1010.

### III.   DISCUSSION

5        Plaintiff raises two claims of error: (1) the ALJ committed legal error by rejecting
6   the opinions of Plaintiff's treating rheumatologist Dr. Ramin Sabahi and Plaintiff's
7   independent medical examiner Dr. Brian R. Briggs in favor of the opinion of state agency
8   reviewer Dr. Michael Keer; and (2) the ALJ committed legal error by failing to set forth
9   specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. The
10  Court addresses each in turn.

### a.   Medical Opinion Evidence

12       In formulating Plaintiff's RFC, the ALJ discussed the medical opinions of several
13  different sources. (Doc. 17-3 at 22–24). The ALJ clarified at the outset of this discussion
14  that he would "not defer or give any specific evidentiary weight, including controlling
15  weight, to any prior administrative medical finding(s) or medical opinion(s), including
16  those from [Plaintiff's] medical sources." (*Id.* at 22). Among the medical opinions
17  discussed by the ALJ were the opinions of Dr. Yosef Schwartz and Dr. Michael Keer, State
18  agency reviewing consultants, Dr. Paul Bendheim, a consultative examiner, Dr. Ramin
19  Sabahi, Plaintiff's treating physician, and Dr. Brian R. Briggs, a consultative examiner. (*Id.*
20  at 22–24). The ALJ declined to assign much weight to most of these opinions,
21  characterizing them as "not persuasive." (*Id.*). The ALJ did, however, compare Dr.
22  Schwartz's and Dr. Keer's opinions, finding Dr. Keer's opinion to be "more persuasive"
23  than Dr. Schwartz's opinion. (*Id.* at 22). Plaintiff challenges the ALJ's rejection of Drs.
24  Sabahi and Briggs' opinions on several grounds.

### 1.   Applicability of New Regulations Under 20 C.F.R. § 404.1520c

26       Plaintiff first suggests that the ALJ failed to apply the proper legal standard for
27  evaluation of medical opinions and prior administrative medical findings. (Doc. 21 at 11).
28  Plaintiff argues that the Ninth Circuit precedent requiring deference to treating physicians'

opinions or "specific and legitimate reasons" to reject them is "arguably unchanged by any change in [SSA] regulations." (*Id.* at 11–12 n.13). Defendant responds that, although Ninth Circuit law previously required ALJs to defer to the opinions of treating physicians, such deference is no longer required because the SSA has promulgated new regulations, effective March 2017, that "eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those from treating sources."[1] (Doc. 29 at 10) (citing 20 C.F.R. § 404.1520c(a)). In reply, Plaintiff clarifies that his Opening Brief is not suggesting that the treating physician rule still applies to his case in so far as it requires deference to treating physicians' opinions over other sources, but instead is questioning whether the Ninth Circuit's "specific and legitimate reasons" standard for rejecting a treating physician opinion is still good law in view of the 2017 regulations requiring that "an ALJ must articulate legally sufficient reasons supported by substantial evidence when evaluating medical opinions." (Doc. 30 at 2–3, n.3).

"In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule[2], among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). While the Ninth Circuit has not addressed the question of whether the "treating physician rule," in any respect, remains valid in light of the 2017 regulations, another Court in this District addressed the issue in *Pennock v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08191-PCT-DWL, 2020 WL 6796768, at *2–3 (D. Ariz. Nov. 19, 2020). There, the Court discussed *Schisler v. Sullivan*,

---

[1] Because Plaintiff's claim for disability benefits was filed with the SSA on September 28, 2017, it is undisputed that the new social security regulations that went into effect for cases filed on or after March 27, 2017 apply to this case notwithstanding the fact that Plaintiff originally claimed benefits using a disability onset date in 2015. *See* 20 C.F.R. § 416.920c (titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017").

[2] Under the treating physician rule, more weight was given to the opinions of treating physicians than to the opinions of examining and non-examining physicians. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). If a treating physician's opinion was contradicted by another physician's opinion, an ALJ had discretion to reject it only "by providing specific and legitimate reasons [] supported by substantial evidence" in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

3 F.3d 563 (2d Cir. 1993), in which the Second Circuit determined whether an agency's regulatory changes are binding on courts over established circuit precedent. *Pennock*, 2020 WL 6796768, at *3. In *Schisler*, the Second Circuit held that the new regulations were promulgated consistent with the agency's statutory authority and were valid. 3 F.3d at 564–65. Thus, the regulations were "binding" on district courts in Social Security appeals. *Id.* In *Pennock*, another Court in this District found the *Schisler* analysis compelling and determined that the plaintiff was not entitled to reversal based on an argument equivalent to the one presented by Plaintiff in this case. 2020 WL 6796768, at *3. This Court is not presented with any reason to stray from the opinion in *Pennock*. Indeed, Plaintiff notes in his Reply Brief that several decisions from other Courts in this District have rejected to apply the specific and legitimate reasons standard in evaluating medical opinions for post-March 2017 disability determinations, instead holding that "the Court must determine whether the ALJ articulated a finding of persuasiveness with legally sufficient, substantial evidence." (Doc. 30 at 2-3, n.3). Accordingly, Plaintiff is not entitled to reversal on this basis.

Under the new regulations, Dr. Sabahi's opinion, as Plaintiff's treating physician, is not accorded presumptive deference over any of the other medical opinions in the record. The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c, 416.920c. Rather, the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. The ALJ may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3).

2. Dr. Michael Keer, D.O.

Two state agency reviewers, Dr. Schwartz and Dr. Keer, evaluated Plaintiff's medical records and issued opinions on their findings. (Doc. 17-3 at 22). The ALJ

considered both opinions together, ultimately finding that, by comparison, Dr. Keer's opinion that Plaintiff could perform light work[3] was more persuasive and more consistent with the evidence of Plaintiff's impairments than Dr. Schwartz's opinion that Plaintiff could perform medium work.[4] (*Id.*).

As noted by the ALJ, Dr. Keer "opined the [Plaintiff] could perform light work with frequent climbing ramps and stairs, balancing, stooping, kneeling and crouching, occasional climbing ladders, ropes and scaffolds, kneeling and crawling, frequent bilateral overhead reaching and limited exposure to extreme cold, heat, wetness and hazards." (Doc. 17-3 at 22, citing Doc. 17-4 at 29–30, 33).

The ALJ addressed Dr. Keer's opinion as follows:

> Dr Keer's opinion is found to be more persuasive because it is more consistent with the evidence as a whole. Specifically, radiographic studies confirm cervical and lumbar degenerative disc disease as well as right shoulder degeneration [(Doc. 17-8 at 116; Doc. 17-9 at 150)]. Further, it is noted throughout the record that the claimant exhibited soft tissue tenderness in the back, elbows and knees, which supports some exertional and nonexertional restrictions.

(Doc. 17-3 at 22).

At the outset, Plaintiff argues that the ALJ erred "by deciding that the opinion of Dr. Keer, who only reviewed a limited record, was 'more persuasive'" and by relying on Dr. Keer's opinion in determining Plaintiff's RFC. (Doc. 21 at 15). It is not entirely clear, but it appears that Plaintiff is arguing that the ALJ erred by finding Dr. Keer's opinion more persuasive and more consistent with the evidence than Drs. Sabahi and Briggs' opinions, which the ALJ did not do. Instead, the ALJ properly compared the opinions of both state agency reviewers and determined that Dr. Keer's more restrictive opinion was more consistent with Plaintiff's claimed limitations than Dr. Schwartz's less restrictive

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing." 20 C.F.R. § 416.967(b).

[4] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(b). If someone can perform medium work, he or she can also perform light work. *Id.*

opinion, considering radiographic study results and Plaintiff's soft tissue tenderness. (Doc. 17-3 at 22). Separately, the ALJ addressed Drs. Sabahi and Briggs' opinions and discussed how well supported and consistent those opinions were with the record evidence, as discussed in further detail below. (Doc. 17-3 at 23–24). The bulk of Plaintiff's arguments about Dr. Keer's opinion seem to be premised on Plaintiff's mischaracterization of the ALJ's opinion. In so far as Plaintiff argues that the ALJ erred in evaluating Dr. Keer's opinion, however, the Court addresses Plaintiff's arguments below.

Without explanation or supporting argument, Plaintiff summarily states that "[t]he ALJ rationale failed to demonstrate supportability or consistency of Dr. Keer's opinion with the evidence in this record." (Doc. 21 at 16) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)). The Court disagrees and finds that the ALJ provided legitimate reasons based on substantial evidence to adopt Dr. Keer's opinion as supported by and consistent with the record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). As noted by the ALJ, although the record evidence demonstrates Plaintiff's lack of full work capacity, it is consistent with Dr. Keer's finding that Plaintiff could still perform light work with some restrictions. For example, the ALJ noted that spinal images showed only "[m]ild degenerative" and structural changes (Doc. 17-8 at 116; Doc. 17-9 at 155–57), clinical findings showed full range of motion of Plaintiff's back, no muscle weakness, normal range of motion of his extremities, and normal gait (*see e.g.*, Doc. 17-9 at 161, 169; Doc. 7-10 at 4, 9, 14), and Plaintiff engaged in daily activities such as walking, stretching, and lifting weights (Doc. 17-9 at 169). Accordingly, the ALJ did not commit reversible error in determining the supportability and consistency of Dr. Keer's opinion. (Doc. 17-3 at 22).

Next, Plaintiff argues that the ALJ improperly found that Dr. Keer's assessment was "more consistent with the evidence as a whole" because the ALJ was "not qualified to provide an independent view of the medical evidence to decide what was or was not consistent with ratings of a claimant's work capacities." (Doc. 21 at 15) (citing Doc. 17-3 at 22). However, in accordance with 20 C.F.R. § 404.1520c(c)(1)–(2), the ALJ weighed

the objective medical evidence to determine whether Dr. Keer's opinion was consistent with and supported by the record, specifically noting which diagnostic tests were relevant to the determined RFC and what conclusions Plaintiff's treating doctors gleaned from those tests. (Doc. 17-3 at 22). In particular, the ALJ's opinion cites to Exhibits 4F and 17F for his conclusion that "radiographic studies confirm cervical and lumbar degenerative disc disease as well as right shoulder degeneration." (*Id.*). Far from the ALJ independently interpreting Plaintiff's radiographic studies himself and substituting his own medical judgments for those of Plaintiff's treating physicians, the ALJ supported his conclusion with citations to the diagnoses of Dr. Brian Frohna, who reviewed the MRI results of Plaintiff's spine, and Dr. Krista Pellicore, who reviewed the x-ray results of Plaintiff's shoulder. (*Id.*) (citing Doc. 17-8 at 116 ("MRI 3T Lumbar SPINE WO . . . Impression: 1. Left paramedian disc protrusion at L4-L5 . . . . 2. Mild degenerative change elsewhere in the lumbar spine . . . ."); Doc. 17-9 at 150 ("Right shoulder x-rays were done 05/22/2018. The x-ray report indicates degenerative disease of the a.c. joint.")). Thus, the ALJ did not substitute his own judgment for that of any of the medical sources, rather he objectively explained how Dr. Keer's opinion that Plaintiff was only capable of light work was consistent with Plaintiff's doctors' interpretations of the radiographic studies and Plaintiff's doctors' treatment notes finding soft tissue tenderness. (*Id.*; *Garrison*, 759 F.3d at 1013–14 ("[t]he ALJ must set forth his own interpretations and explain why they . . . are correct")).

And while Plaintiff further argues that the ALJ "provided no examples of what consistencies in the record were thought to support [Dr. Keer's] opinion," (Doc. 21 at 16), the Court disagrees because the ALJ clearly followed his conclusion about the consistency of the ALJ's opinion with specific examples from the record, as discussed above. (Doc. 17-3 at 22) ("Specifically, radiographic studies confirm cervical and lumbar degenerative disc disease as well as right shoulder degeneration").

Plaintiff further argues that the ALJ contradicted himself by explaining the consistency of Dr. Keer's opinion with the radiographic studies and Plaintiff's soft tissue

tenderness. (Doc. 21 at 16). Again, Plaintiff's argument confuses the context of the ALJ's discussion. As discussed above, the ALJ referenced radiographic studies and Plaintiff's soft tissue tenderness to show that Dr. Keer's finding of lower work capability is "more consistent" with the record evidence than Dr. Schwartz's finding of greater work capability. (Doc. 17-3 at 22). In other words, the objective evidence supported exertional and nonexertional restrictions that would more likely allow Plaintiff to be capable of performing light work than to be capable of performing medium work. The ALJ's discussion provides sufficient support for his finding that, in the context of this comparison, greater limitations are more consistent than lesser limitations. When reviewing the ALJ's decision, "where the evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Finally, Plaintiff summarily asserts that the ALJ "provided no connection between the cited evidence [of Plaintiff's tenderness] and the conclusion that [the] evidence 'supports some exertional and nonexertional restrictions,' presumably by Dr. Keer." (Doc. 21 at 16) (citing Doc. 17-3 at 22). Contrary to Plaintiff's assertion, the Court finds that the ALJ's conclusion that Plaintiff has both exertional and nonexertional limitations logically flows from the ALJ's discussion of multiple notations throughout the record that Plaintiff "exhibited soft tissue tenderness in the back, elbows, and knees." (Doc. 17-3 at 22).

The Social Security Regulations define both exertional and nonexertional limitations. An "exertional limitation" is "[a]n impairment-caused limitation which affects capability to perform an exertional activity." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). An "exertional activity" is defined as "[o]ne of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work." *Id.* It stands to reason that the more exertional limitations a claimant demonstrates, the lower level of work they are capable of. In contrast, a "nonexertional impairment" is:

> [a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech,

and use of the body to climb, balance, stoop, kneel, crouch,
crawl, reach, handle, and use of the fingers for fine activities.

*Id.* at 6.

And in the ALJ's discussion of his RFC determination, the ALJ explains that for a claimant's fibromyalgia impairment to be considered severe and disabling, "there must be sufficient objective medical evidence to support a finding that the claimant suffers from a medical determinable impairment that limits their functional abilities to the extent that it precludes him or her from performing any substantial gainful activity" at any level of work. (Doc. 17-3 at 20). The ALJ further explains that one way to satisfy these criteria is to produce "documentation of . . . 11 of 18 positive tender points through digital palpitation." (*Id.*). Elsewhere in the opinion, the ALJ cites to record evidence that Plaintiff's physicians have documented Plaintiff's soft-tissue tenderness as manifestations of Plaintiff's fibromyalgia. (*Id.* at 20, 22–23 (citing Doc. 17-8 at 98–99; Doc. 17-11 at 148)).

It logically follows that evidence of Plaintiff's soft-tissue tenderness is evidence of the extent to which Plaintiff's fibromyalgia requires the ALJ to adopt more restrictive limitations in Plaintiff's RFC than those proposed by Dr. Schwartz. In particular, as noted by the ALJ, tenderness and pain in Plaintiff's back, elbows, and knees would limit Plaintiff's ability to sit, stand, walk, lift, carry, push, and pull, the defined exertional activities, and use of his body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use his fingers, the defined nonexertional activities. (Doc. 17-3 at 21). Thus, while Plaintiff argues that the ALJ fails to "create a logical bridge" between Plaintiff's soft tissue tenderness and his conclusion that Plaintiff has exertional and nonexertional limitations, the Court disagrees. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("[i]n reaching his findings, the [ALJ] is entitled to draw inferences logically flowing from the evidence."); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[a]s a reviewing court, we are not deprived of our faculties for drawing . . . inferences from the ALJ's opinion").

3.  Dr. Rahim Sabahi, M.D.

From 2017 to 2019, Dr. Sabahi examined and treated Plaintiff. (Doc. 17-10 at 1, 8, 13, 16, 19, 22, 25, 28, 31). In July 2018, Dr. Sabahi completed a check box form wherein he opined that Plaintiff's impairments preclude an eight-hour workday. (Doc. 17-9 at 142). The ALJ fully discussed Dr Sabahi's medical opinion, stating:

> [Dr. Sabahi] opined the [Plaintiff] could sit for four hours, stand/walk for two hours in a workday and lift/carry more than ten pounds but less than fifteen pounds [(*Id.*)]. He opined that it is medically necessary for the [Plaintiff] to alternate between sitting, standing or walking every twenty-one to forty-five minutes with rest periods up to four minutes [(*Id.*)]. He opined the [Plaintiff] could occasionally use his bilateral hands, bend and reach and less than occasionally stoop [(*Id.*)]. He opined the [Plaintiff's] medical impairments cause moderate cognitive or pace limitations that would inhibit the completion of more than one and two-step job duties over an eight-hour workday [(*Id.* at 143)]. His impairments cause or contribute to headaches or mental fatigue more than four times per month and result in his needing to rest one to two hours at a time [(*Id.*)]. He opined the [Plaintiff] would miss six or more days per month from work due to his medical condition [(*Id.*)].

(Doc. 17-3 at 23).

The ALJ found Dr. Sabahi's opinions not persuasive because "they are not supported by the record or his own treatment notes." (*Id.*). The ALJ addressed Dr. Sabahi's opinions as follows:

> Upon examination, Dr. Sabahi noted the [Plaintiff] had generally normal physical examinations findings [(Doc. 17-10 at 3–4, 9–10, 13–15)]. His examinations of the [Plaintiff] showed normal hands, wrists, spine and knees [(*Id.* at 4, 9–10, 15, 18, 21, 24, 27, 29, 32)]. He did note some right shoulder impingement sign and tender soft tissues of the back, lateral hips, knees, and elbow pain [(*Id.*)]. However, these findings do not support the extreme limitations assessed by Dr. Sabahi [(*Id.* at 15, 17–18, 21, 27, 29)]. Dr. Sabahi's treatment notes do not mention medication side effects. Instead, he noted that the [Plaintiff's] symptoms were improved with Tramadol and NSAIDS [(*Id.* at 2, 13, 19)]. In fact in 2018 and 2019, the [Plaintiff] reported to Dr. Sabahi that his pain was improved overall [(*Id.* at 22, 28, 31)]. Dr. Sabahi's opinion regarding headaches is also not supported by his treatment notes. The

> [Plaintiff] denied headaches in review of systems performed at Dr. Sabahi's office [(*Id.* at 14, 17)]. Further, this opinion appears to be based upon the [Plaintiff's] subjective statements regarding his condition rather than objective and clinical findings.

(Doc. 17-3 at 23).

Plaintiff makes four arguments as to why the ALJ erred in evaluating Dr. Sabahi's Opinion. As discussed below, none are availing.

First, Plaintiff argues that the ALJ "failed to provide adequate rationale for [his] conclusion that Dr. Sabahi's assessment was 'not persuasive.'" (Doc. 21 at 16) (citing Doc. 17-3 at 23). Specifically, Plaintiff contends that the ALJ did not specify what evidence contradicts any particular limitations assessed by Dr. Sabahi. (Doc. 21 at 17). However, the Court finds that the ALJ gave legally sufficient reasons for rejecting Dr. Sabahi's opinion, which was contradicted by his own treatment notes and not supported by record evidence, and that those reasons are supported by substantial evidence in the record. *Lester*, 81 F.3d 821 at 830–31. For example, as noted by the ALJ, Dr. Sabahi's treatment notes fail to substantiate or lend support for his opinion regarding any of Plaintiff's assessed limitations. (Doc. 17-3 at 23). Although Plaintiff exhibited some sign of right shoulder impingement, tender soft tissue throughout the body, and elbow pain, Dr. Sabahi's examinations showed generally normal findings including normal hands, wrists, spine, and knees. (Doc. 17-10 at 3–4, 9–10, 13–15). The ALJ further noted that Dr. Sabahi's finding that Plaintiff's "impairments cause or contribute to headaches" was inconsistent with Plaintiff's denial of headaches during Dr. Sabahi's reviews of Plaintiff's symptoms. (Doc. 17-9 at 143; Doc. 17-10 at 14, 17). Additionally, the ALJ properly determined that Dr. Sabahi's assessed limitations were not supported by the record, as discussed earlier in the ALJ's opinion, including physical examinations showing full range of motion in Plaintiff's back and extremities (Doc. 17-9 at 3, 161), imaging showing a lack of evidence of nerve root impingement, severe stenosis, or fractures (Doc. 17-8 at 115–16; Doc. 17-9 at 150), conservative yet effective treatment (Doc. 17-9 at 67, 86, 146; Doc. 17-10 at 2), and Plaintiff's daily activities including performing light housework, making beds, and lifting

weights (Doc. 17-3 at 52–57). (*Id.* at 20–23). Thus, the ALJ provided adequate rationale for rejecting Dr. Sabahi's opinion. *Hernandez v. Berryhill*, 707 Fed. App'x 456, 457–58 (9th Cir. 2017) (finding the ALJ's determination that a treating physician's own treatment notes did not support his opinion was a sufficient reason for rejecting that opinion); *Connett v. Barnhart*, 340 F.3d 871, 874–75 (9th Cir. 2003) (finding the same); *Crosby v. Comm'r of Soc. Sec. Admin.*, 489 Fed. App'x 166, 168–69 (9th Cir. 2012) (finding the fact that a treating physician's opinion was inconsistent with his own treatment records, unsupported by objective clinical findings, and premised significantly on plaintiff's subjective statements provided a legitimate basis for the ALJ to discount that opinion).

Second, Plaintiff argues that "improvement from time-to-time in a claimant's condition is not at odds with an inability to perform work activities on a regular basis," and that such improvements are not a sufficient basis for "discounting the severity of a claimant's impairments." (Doc. 21 at 17). However, as noted by the ALJ, Plaintiff's reports to Dr. Sabahi and Dr. Sabahi's treatment notes tend to show overall improvement in 2018 and 2019 and consistent improvement with rest and medication. (Doc. 17-10 at 2, 13, 19, 22, 25, 28, 31). Plaintiff's reported improvement to Dr. Sabahi is also consistent with Plaintiff's reported improvement from physical therapy and subacromial injections to his primary care provider and physiatrist, respectively. (Doc. 17-9 at 99, 146). Where a Plaintiff's improved condition is contradictory to the limitations as assessed by a medical provider within the context of the "overall diagnostic picture[,]" that improvement can serve as a legitimate basis for discounting a medical opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)

Third, Plaintiff argues that the ALJ's citation to two progress notes where Plaintiff denied headaches does not serve as a legitimate basis for discounting Dr. Sabahi's opinion. (Doc. 21 at 17–18). In *Orn v. Astrue*, the Ninth Circuit stated that "[c]onsistency does not require similarity in findings over time despite a claimant's evolving medical status." 495 F.3d 625, 634 (9th Cir. 2007). A medical opinion shows consistency if it is "substantiated by the contemporaneous medical tests" and consistent "with the record as a whole." *Id.*

1    (quoting 20 C.F.R. § 404.1527(d)(4)[5]). Here, the ALJ determined that Dr. Sabahi's opinion

2    regarding headaches was not supported by his treatment notes. (Doc. 17-3 at 23). This

3    determination was not erroneous, considering that on the same date of Dr. Sabahi's medical

4    opinion, July 10, 2018, Plaintiff denied headaches during a symptom review performed by

5    Dr. Sabahi. (Doc. 17-10 at 23). Thus, Dr. Sabahi's opinion regarding headaches was not

6    substantiated by his contemporaneous treatment notes and the ALJ properly rejected it for

7    that reason. *Orn*, 495 F.3d at 634; *see also Hernandez*, 707 Fed App'x at 457–58

8    (inconsistency between a physician's treatment notes and opinion is a sufficient reason for

9    rejecting that opinion).

10        Fourth, Plaintiff argues that the ALJ engaged in "improper unfounded speculation"

11   when stating "[Dr. Sabahi's] opinion appears to be based upon the claimant's subjective

12   statements regarding his condition rather than objective and clinical findings." (Doc. 21 at

13   18) (citing Doc. 17-3 at 23). In general, a physician's reliance on a claimant's "subjective

14   complaints hardly undermines his opinion as to [a claimant's] functional limitations, as a

15   patient's report of complaints, or history, is an essential diagnostic tool." *Cancanon v.*

16   *Comm'r of Soc. Sec. Admin.*, No. CV-17-04319-PHX-GMS, 2019 WL 1099088, at *3 (D.

17   Ariz. Mar. 8, 2019) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)).

18   However, "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's

19   self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the

20   ALJ may discount the treating provider's opinion." *Id.* (quoting *Ghanim*, 763 F.3d at 1162).

21   Here, as discussed below, the ALJ appropriately made an adverse credibility determination

22   as to Plaintiff's subjective symptom testimony based on Plaintiff's inconsistent statements,

23   daily activities, and conservative treatments. (Doc. 17-3 at 20). Moreover, the ALJ properly

24   found that Dr. Sabahi's opinion was not supported by the record evidence, including

25   clinical findings showing normal hands, wrists, spine, and knees, normal gait and range of

26   motion, and full strength in the extremities, or Dr. Sabahi's own treatment notes, which

27
28   _____
     [5] For claims filed on or after March 27, 2017, a medical opinion is more persuasive the
     more "consistent [it] is with evidence from other medical sources and nonmedical sources."
     20 C.F.R. § 404.1520c(c)(2). In effect, this standard is the same as requiring consistency
     "with the record as a whole." 20 C.F.R. § 404.1527(d)(4).

contradicted his opinion that Plaintiff suffers headaches or mental fatigue more than four times a month. (Doc. 17-10 at 4, 9–10, 15, 18, 21, 23, 24, 27, 29, 32, 122, 124, 133; Doc. 17-3 at 23). Accordingly, the ALJ provided specific and legitimate reasons in determining that Dr. Sabahi's opinion was largely based on Plaintiff's subjective statements instead of clinical findings and objective record evidence. (Doc. 17-3 at 23). Therefore, it was proper for the ALJ to discount Dr. Sabahi's opinion because the only supporting evidence for the opinion was Plaintiff's unreliable self-reports of headaches and pain. *See Cancanon*, 2019 WL 1099088, at *3.

Ultimately, the ALJ did not err in finding Dr. Sabahi's opinion "not persuasive" after analyzing the entire medical record and determining that it did not support Dr. Sabahi's opinion. *Adams v. Comm'r of Soc. Sec. Admin.*, CV-20-01247-PHX-JAT, 2021 WL 2644272, at *5 (D. Ariz. June 28, 2021).

4. Dr. Brian R. Briggs, M.D.

In November 2019, Dr. Briggs completed a check box form as part of an independent medical evaluation. (Doc. 17-11 at 156–59). Dr. Briggs opined that Plaintiff was "incapable of any meaningful work" and that his disability was expected to last for twelve months (*Id.* at 155, 159). The ALJ fully discussed Dr. Briggs' medical opinion, stating:

> [Dr. Briggs] . . . opined the [Plaintiff] has eighteen out of eighteen tender points [(*Id.* at 156)]. He opined the [Plaintiff] had additional symptoms consistent with fibromyalgia including joint pain, depression, muscle pain, anxiety, sleep disturbance, fatigue, impaired concentration, irritable bowel syndrome, headaches, and skin rash [(*Id.* at 157)]. He opined the [Plaintiff] could sit for more than two hours but less than three hours, stand/walk for less than two hours and lift/carry less than ten pounds [(*Id.*)]. He opined that it is medically necessary for the [Plaintiff] to alternate between sitting, standing or walking every twenty-one to forty-five minutes with rest periods of fifteen minutes or more [(*Id.* at 158)]. He opined the [Plaintiff] could less than occasionally use his bilateral hands and feet, bend, reach and stoop [(*Id.*)]. He opined the [Plaintiff's] medical impairments cause severe pain, fatigue, dizziness, headaches and irritable bowel syndrome

- 17 -

symptoms [(*Id.*)]. He opined the [Plaintiff] would miss six or more days per month from work due to his medical condition [(*Id.*)]. He noted the [Plaintiff's] medications cause moderately severe nausea and dizziness [(*Id.* at 159)]. Lastly, he opined these limitations existed since May 1, 2015 [(*Id.*)].

(Doc. 17-3 at 23–24).

The ALJ found Dr. Briggs' opinion not persuasive because "it is inconsistent with the record as a whole." (*Id.*) The ALJ addressed Dr. Briggs' opinion as follows:

[Dr. Briggs'] examination findings contradict the examination findings of the consultative examiner as well as the [Plaintiff's] primary care provider and rheumatologist. Dr. Briggs' examinations of the [Plaintiff] showed the [Plaintiff] had an unstable and unsafe gait that required a cane [(Doc. 17-11 at 154)]. Yet, the [Plaintiff's] physicians clearly noted the claimant has a normal gait and stance and does not require a cane or other assistive device [(Doc. 17-10 at 4, 9, 14, 17, 20, 23, 26, 29, 32 122, 125)]. They noted evidence of cervical and lumbar tenderness, lumbar muscle spasms, and positive trigger points [(Doc. 17-8 at 98–99, 102–03, 107–08, 111–12)]. However, he also exhibited a full range of motion of his back and normal range of motion of his extremities, which is inconsistent with Dr. Briggs' extreme limitations [(Doc. 17-9 at 3, 161, 169, 181; Doc. 7-10 at 4; Doc. 7-11 at 143)].

(Doc. 17-3 at 24).

Plaintiff makes three arguments as to why the ALJ erred in evaluating Dr. Briggs' opinion.

First, Plaintiff argues that the ALJ erred in rejecting Dr. Briggs' medical opinion absent specific and legitimate reasons supported by substantial evidence in the record as a whole.[6] (Doc. 21 at 11, 18). Specifically, Plaintiff contends that the ALJ did not sufficiently support his determination that Dr. Briggs' examination findings contradict the examination findings of Plaintiff's consultative examiner, primary care provider, and rheumatologist.

---

[6] As noted above, in evaluating medical opinions submitted in support of disability applications filed on or after March 27, 2017, the "specific and legitimate reasons" standard is inapplicable. *Pennock*, 2020 WL 6796768, at *2–3. Instead, "the Court must determine whether the ALJ articulated a finding of persuasiveness with legally sufficient, substantial evidence." *Chacon v. Commr. Of Soc. Sec. Admin.*, No. CV-20-01796-PHX-SPL, Doc. 30 at 10 (D. Ariz. Nov. 10, 2021).

(*Id.* at 18). However, in the sentences following the ALJ's determination, he clearly explained how his finding of inconsistency was supported by substantial evidence in the record. (Doc. 17-3 at 24); *See Lester*, 81 F.3d 821 at 830–31. The ALJ explained that while Dr. Briggs' examination showed that Plaintiff had an unstable and unsafe gait, Plaintiff's consultative examiner, primary care provider, and rheumatologist noted that Plaintiff had a normal gait and stance. (Doc. 17-3 at 24; Doc. 17-11 at 154; Doc. 17-10 at 4, 9, 14, 17, 20, 23, 26, 29, 32 122, 125). Further, despite evidence of back tenderness, back spasms, and positive trigger points, Plaintiff exhibited full range of motion in his back and normal range of motion in his extremities. (Doc. 17-8 at 98–99, 102–03, 107–108, 111–112; Doc. 17-9 at 3, 161, 169, 181; Doc. 17-10 at 4; Doc. 7-11 at 143). While the ALJ is not permitted to "cherry pick" from mixed results to support a denial of benefits, the ALJ's consistency determination of Dr. Briggs' opinion is consistent with the record as a whole. *See Garrison*, 759 F.3d at 1010; *Revels,* 874 F.3d at 654.

Second, Plaintiff argues that observations that Plaintiff had a normal gait and stance do not necessarily contradict Dr. Briggs' separate observation that Plaintiff "had an unstable and unsafe gait and stance." (Doc. 21 at 18) (citing Doc. 17-3 at 24). Plaintiff makes no citations to support this contention. (Doc. 21 at 18). As required, the ALJ examined the medical record as a whole and determined that Dr. Briggs' finding regarding Plaintiff's stance and gait was inconsistent with other record evidence. *See Gallant*, 753 F.2d at 145; (Doc. 17-3 at 24). Specifically, examinations performed by Plaintiff's rheumatologist Dr. Sabahi, consultative examiner Dr. Bendheim, and Plaintiff's primary care provider show that Plaintiff had a normal gait at the time of those examinations. (Doc. 17-9 at 138; Doc. 17-10 at 4, 9, 14, 17, 20, 23, 26, 29, 32 122, 125). Dr. Briggs' examination is the sole piece of evidence showing that Plaintiff had an abnormal gait. Thus, the record as a whole is largely unambiguous as to the status of Plaintiff's gait. Even if the medical record was ambiguous, "the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" and the Court defers to the ALJ's findings in this case. *Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (D.

Ariz. Sept. 28, 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Third, Plaintiff argues that the ALJ's RFC determination is inconsistent with the ALJ's analysis. (Doc. 21 at 18). Specifically, Plaintiff asserts that because the ALJ made reference to evidence of "cervical and lumbar tenderness, lumbar muscle spasms, and positive trigger points[,]" a finding that Plaintiff has debilitating symptoms necessarily results from the ALJ's discussion. (*Id.*). However, Plaintiff takes the ALJ's discussion of these impairments out of context. While the ALJ did note that Plaintiff exhibited "cervical and lumbar tenderness, lumbar muscle spasms, and positive trigger points," in the next sentence he stated that "[Plaintiff] also exhibited a full range of motion of his back and normal range of motion of his extremities." (Doc. 17-3 at 24). The Court finds that the ALJ properly examined the medical record as a whole in determining the supportability and consistency of Dr. Briggs' assessment, considering portions of the record that supported his findings and portions that did not. *See Adams*, 2021 WL 2644272, at *5.

Ultimately, the ALJ did not err in finding Dr. Briggs' opinion "not persuasive" after analyzing the relevant medical evidence and determining that it did not support Dr. Briggs' opinions. *Adams*, 2021 WL 2644272, at *5.

**b. Symptom Testimony**

Plaintiff next claims that the ALJ erred by rejecting his subjective symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence. (Doc. 21 at 19).

1. Legal Standard

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). To satisfy this first step, "[t]he claimant need not produce objective medical evidence of the pain or fatigue

1     itself, or the severity thereof[,] . . . [n]or must the claimant produce objective medical

2     evidence of the causal relationship between the medically determinable impairment and

3     the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). The claimant must

4     only establish a reasonable inference of causation. *Id.*

5            If the claimant satisfies the first step, and the ALJ finds no affirmative evidence of

6     malingering, *Garrison*, 759 F.3d at 1014, then "the ALJ 'may not discredit a claimant's

7     testimony of pain and deny disability benefits solely because the degree of pain alleged by

8     the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d

9     748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Instead, the ALJ "may

10    only find an applicant not credible by making specific findings as to credibility and stating

11    clear and convincing reasons for each."[7] *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883

12    (9th Cir. 2006). To make specific findings, "the ALJ must identify what testimony is not

13    credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

14                  2.    <u>Inconsistency with Medical Evidence</u>

15    The ALJ made the following statement regarding Plaintiff's symptom testimony:

16             After careful consideration of the evidence, the undersigned
                 finds that the [Plaintiff's] medically determinable impairments

17             could reasonably be expected to cause some of the alleged
                 symptoms; however, the [Plaintiff's] statements concerning

18             the intensity, persistence and limiting effects of these
                 symptoms are not entirely consistent with the medical evidence

19             and other evidence in the record for the reasons explained

20             throughout this decision.

21    (Doc. 17-3 at 19).

22            Specifically, the ALJ found that Plaintiff's alleged symptoms were inconsistent with

23    the objective medical evidence, Plaintiff's daily activities, and Plaintiff's contradictory

24    statements. (*Id.* at 20–22).

25            Plaintiff argues that the ALJ erred by not explaining "which of [Plaintiff's]

26    symptoms [the ALJ] found consistent or inconsistent with the evidence in [his] record and

27

28    ---
[7] "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

how [the ALJ's] evaluation of the [Plaintiff's] symptoms led to [the ALJ's] conclusions." (Doc. 21 at 19) (quoting SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017)). Plaintiff further argues that the ALJ committed fundamental legal error by rejecting the severity of Plaintiff's symptoms on the basis that the "symptoms are not entirely consistent with the medical evidence." (Doc. 21 at 20) (citing Doc. 17-3 at 19). Plaintiff asserts that "[a] claimant need only establish a medically determinable impairment that could reasonably be expected to cause the claimant's symptoms, but a claimant is not required to provide medical evidence of the severity of those symptoms."[8] (Doc. 21 at 20–21) (citing *Bunnell*, 947 F.2d at 345–46; *Lacy v. Comm'r of Soc. Sec.*, No. CV-18-04117-PHX-SPL, 2020 WL 1285948, at *1–2 (D. Ariz. Mar. 18, 2020) ("the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged; she need only show that it could reasonably have caused some degree of the symptoms.'") (quoting *Smolen*, 80 F.3d at 1282)).

The Ninth Circuit has held that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. Although Plaintiff need not *produce* evidence to corroborate the severity of his symptoms, *Smolen*, 80 F.3d at 1282, when evidence that *is produced* contradicts Plaintiff's symptom testimony, the ALJ can use it as a sufficient reason to reject the testimony. *See, e.g.*, *Carmickle*, 533 F.3d at 1661; *Alto v. Saul*, 818 Fed. App'x 734, 737 (9th Cir. 2020); *Everson v. Colvin*, 577 Fed. App'x 743, 744 (9th Cir. 2014).

Here, Plaintiff alleged widespread and disabling neck, back, lower extremity and upper extremity pain. (Doc. 17-3 at 20). The ALJ found that this testimony contradicted the medical evidence. (*Id.*). Although the ALJ noted that physical examinations revealed

---

[8]Plaintiff notes that he is aware of other opinions by this Court in which his argument has been denied. *See Adams*, 2021 WL 2644272, at *7; *Williams v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00136-PHX-JAT, 2020 WL 7123010, at *6 (D. Ariz. Dec. 4, 2020). This Court also recognizes that a different judge in this District has reached a different conclusion. *Lacy*, 2020 WL 1285948, at *1–2 (finding that an ALJ erred by discounting a claimant's testimony on the basis that it was not "entirely consistent with the medical evidence and other evidence in the record" because "[that] is a standard which is much higher than what is required on the part of the claimant."). However, the Plaintiff does not provide, nor is this Court aware of, any reason to diverge from its previous holding.

evidence of cervical and lumbar tenderness, lumbar muscle spasms, and positive trigger points, the ALJ also noted that the medical evidence showed full range of motion in Plaintiff's back, normal range of motion in Plaintiff's extremities, full upper extremity strength and intact sensation, normal gait, and only mildly decreased neck range of motion. (*Id.* at 20, 22) (citing Doc. 17-8 at 99, 107, 130, 134; Doc. 17-9 at 3, 99, 134, 150, 161; Doc. 17-10 at 5). Further, the ALJ noted that while MRI imaging and cervical x-rays showed some disc protrusion, disc bulging, mild degenerative lumbar changes, cervical spondylosis, and degenerative disease in the shoulder, there was "no evidence of any nerve root impingement, severe stenosis, progressive neurological deficits, infections, tumors, or fractures to cause the severity of pain and limitations alleged." (Doc. 17-3 at 20; Doc. 17-8 at 116; Doc. 17-9 at 150).

With respect to Plaintiff's fibromyalgia pain, the ALJ found that "the degree of limitations alleged are not supported by the objective and clinical findings in the record." (Doc. 17-3 at 21). The ALJ noted that while examinations were consistent with Plaintiff's alleged pain, the examinations also showed that Plaintiff had normal muscle strength and full range of motion in his spine and extremities. (*Id.* at 20) (citing Doc. 17-8 at 99, 107, 130, 134; Doc. 17-9 at 3, 161).

The ALJ also contrasted Plaintiff's claimed limitation that he experiences pain while sitting with Plaintiff's report that he was able to sit without discomfort during Dr. Bendheim's examination. (Doc. 17-9 at 138).

Plaintiff also testified that he needs an assistive device to ambulate due to his symptoms. (Doc. 17-3 at 20). The ALJ found this testimony to conflict with medical evidence indicating that Plaintiff had a normal gait and stance, no localized joint swelling or deformities of his extremities, normal spine motion, full hip and shoulder strength, no muscle weakness, and normal range of motion in his joints. (*Id.*) (citing Doc. 17-10 at 4, 9, 14, 17, 20, 23, 26, 29, 32 122–23, 125; Doc. 17-11 at 141–143). These findings are factual determinations solely within the province of the ALJ. *Andrews*, 53 F.3d at 1039 ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony,

1    and for resolving ambiguities").

2         While the medical record can be read more favorably to Plaintiff, the ALJ's reading

3    is rational and constitutes substantial evidence on which to base his findings. Because the

4    Court finds below that the ALJ identified other valid, clear and convincing reasons to

5    discredit Plaintiff's testimony, inconsistency with the medical record was not the sole basis

6    underlying the ALJ's opinion. *See Bunnell*, 947 F.2d at 345 (inconsistency with medical

7    records is not, standing alone, a clear and convincing reason to discredit a plaintiff's

8    testimony). Therefore, the ALJ did not err by rejecting Plaintiff's subjective symptom

9    testimony because of its inconsistency with the medical evidence.

10              3.  Daily Activities and Inconsistent Statements

11        The ALJ also discounted Plaintiff's symptom testimony based on Plaintiff's daily

12   activities and conflicting statements. (Doc. 17-3 at 21–22); *Lingenfelter*, 504 F.3d at 1040

13   (9th Cir. 2007) (the ALJ may consider "whether the claimant engages in daily activities

14   inconsistent with the alleged symptoms"); *Khanishian v. Astrue*, 238 Fed. App'x 250, 252–

15   53 (9th Cir. 2007) (holding that inconsistent statements are "appropriate" to consider in a

16   credibility determination). Plaintiff testified that severe fatigue prevents him from

17   returning to work, that he experiences pain when sitting, standing, and walking, and that

18   he cannot stand or walk for greater than twenty minutes due to pain in his knees. (Doc. 17-

19   3 at 19). Plaintiff also testified that he has been using a cane for the past year due to his

20   pain and that he requires multiple breaks during the day to lay down to relieve his

21   symptoms. (*Id.*).

22        The ALJ contrasted Plaintiff's claimed limitations with Plaintiff's reports that he:

23             prepares his children for school, prepares breakfast, does light
               housework, helps with homework, makes beds, drives a car,
24             and attends church weekly. He is independent with personal
               care and activities of daily living [(Doc. 17-7 at 11; Doc. 17-9
25             at 137)]. He was able to work part-time in September 2017
               [(Doc. 17-9 at 6)]. He is physically active and reported losing
26             eight pounds in February 2017 [(Doc. 17-9 at 20)]. He walks
               thirty minutes daily for exercise, stretches and lifts weights
27             [(Doc. 17-9 at 169)].

28

- 24 -

(Doc. 17-3 at 22).

The ALJ found that this evidence indicated that Plaintiff's symptoms are not as severe and limiting as alleged. (Doc. 17-3 at 22). Plaintiff argues that the "record evidence concerning [Plaintiff's] daily activities neither contradicts his testimony nor meets the threshold for full-time work, the two grounds we have recognized for using daily activities to form a basis for an adverse credibility determination." (Doc. 21 at 22) (quoting *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021)). However, *Smith* only stands for the rule that an ALJ must provide clear and convincing reasons relevant to the portion of plaintiff's symptom testimony that the ALJ is rejecting. *Smith*, 14 F.4th at 1114 (finding that an ALJ erred in disregarding *all* of the claimant's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only applicable to the late-period testimony). Here, Plaintiff reported engaging in daily activities that contradict his symptom reports throughout the full period of his alleged disability. For example, Plaintiff reported being physically active in August 2015 and February 2017, reported working part-time in September 2017, and reported walking three to four times a week and no discomfort while sitting in May 2018. (Doc. 17-9 at 20, 48, 137). Further, Plaintiff reported lifting weights in December 2019 and testified at the December 2019 hearing that he performs activities of daily living, does light housework, cares for his children, drives, and attends church. (Doc. 17-3 at 52–57; Doc. 17-9 at 169); *see Whittier v. Kijakazi*, No. 20-56149, 2022 WL 542553, at *1 (9th Cir. Feb. 23, 2022) (finding that an ALJ did not err in discounting plaintiff's symptom testimony concerning debilitating pain based on, in part, daily activities including performing light housework, preparing meals, driving, taking care of a dog, grocery shopping, and taking walks); *Hocevar v. Kijakazi*, No. 20-36069, 2021 WL 5917991, at *1 (9th Cir. Dec. 15, 2021) (holding that the ALJ did not err in determining that plaintiff's testimony that "he cannot work because [he] feels that someone ripped his soul out of his body" was contradicted by evidence that he cared for his son, drove a car, exercised for 30 minutes per day, and played pool). Therefore, the ALJ properly determined that Plaintiff's testimony was not credible regarding his capacity throughout

1    the full timeframe of his disability claim, based on Plaintiff's daily activities and

2    inconsistent statements.

3                    4.    Treatment

4          When evaluating Plaintiff's symptom testimony, the ALJ also examined evidence

5    regarding Plaintiff's pain treatment and found "[t]he conservative and routine nature of the

6    [Plaintiff's] treatment is not indicative of symptoms of a severity that would prohibit all

7    work activity and [is] inconsistent with his allegations of disabling pain." (Doc. 17-3 at

8    21).

9          Plaintiff alleges widespread, disabling pain that increases with overhead

10   movements. (*Id.*). The ALJ noted, however, that Plaintiff's treatment notes showed that his

11   lower extremity, shoulder, and back pain improved with physical therapy. (Doc. 17-9 at

12   67). Plaintiff also reported improvement of his pain with Tramadol and Ibuprofen. (Doc.

13   17-10 at 2, 13, 19). After reporting increased pain in May 2018, Plaintiff reported moderate

14   improvement of his pain with subcromial injections in June of the same year. (Doc. 17-9

15   at 146); *see also Bechtold v. Comm'r of Soc. Sec.*, No. 2:19-CV-85-DMC, 2020 WL

16   2319873, at *5 (E.D. Cal. May 11, 2020) (listing pain relief injections under "conservative

17   treatments"). Further, despite being prescribed Plaquenil, Tramadol, Cymbalta, and

18   Gabapentin, the ALJ noted that Plaintiff reported taking Ibuprofen and did not fill his

19   Plaquenil prescription. (Doc. 17-9 at 2, 99, 133, 160).

20         Plaintiff argues that evidence of his conservative treatment is not a reason to

21   discount his symptom testimony because there is no evidence that more aggressive

22   treatment was available for his conditions. (Doc. 21 at 22). Plaintiff does not cite to any

23   authority or provide any reasoning in support of this argument. "An ALJ is also free to

24   consider the amount of treatment a claimant receives for an impairment in determining the

25   nature and severity of the impairment, as well as medication and any other measures used."

26   *Bernal v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08040-PCT-SMB, 2022 WL 375849,

27   at *3 (D. Ariz. Feb. 8, 2022) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv)– 404.1529(c)(3)(vi)).

28   While there is no explicit evidence in the record that more aggressive treatment was made

1    available to Plaintiff, there is also no evidence that Plaintiff sought a more aggressive
2    treatment program.[9] *See Tommasetti*, 533 F.3d at 1039–40. The conservative nature of
3    Plaintiff's treatment along with its relieving effects was a sufficiently specific, clear, and
4    convincing reason for the ALJ to discredit Plaintiff's symptom testimony about his pain
5    levels and functional limitations. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)
6    (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)) ("evidence of a
7    'conservative treatment' is sufficient to discount a claimant's testimony regarding severity
8    of impairment.").

9        For these reasons, the Court finds that the ALJ provided specific, clear, and
10   convincing reasons for discounting Plaintiff's symptom testimony. *See Brown-Hunter*, 806
11   F.3d at 488–89.

12   **IV.    CONCLUSION**

13       The Court finds that substantial evidence supports the ALJ's nondisability
14   determination. The ALJ properly considered the medical opinions and medical evidence of
15   record and properly discounted Plaintiff's symptom testimony by providing specific, clear,
16   and convincing reasons supported by substantial evidence. Therefore, the Court finds that
17   the ALJ did not err in his decision.

18       Based on the foregoing,

19       **IT IS ORDERED** that the decision of the ALJ, (Doc. 17-3 at 14–26), is
20   **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss
21   this action.

22       Dated this 24th Day of March, 2022.

23

24

25                                              James A. Teilborg
                                      Senior United States District Judge
26

27

28

---

[9] Indeed, Plaintiff's medical record does not show that Plaintiff underwent surgery or inpatient care, or otherwise attempted to. *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (finding that surgery is evidence of nonconservative treatment).